**WINSTON TAYLOR LLP**
Eimeric Reig-Plessis (SBN: 321273)
eimeric.reig@winstontaylor.com
101 California Street
San Francisco, CA 94111-5891
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Samantha Lerner (*pro hac vice forthcoming*)
IL Bar No. 6293319
samantha.lerner@winstontaylor.com
300 N. LaSalle Drive, Suite 4400
Chicago, IL 60654-3406
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

William M. Logan (*pro hac vice forthcoming*)
TX Bar No. 24106214
william.logan@winstontaylor.com
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Brian L. O'Gara (*pro hac vice forthcoming*)
IL Bar No. 6342669
brian.ogara@winstontaylor.com
300 N. LaSalle Drive, Suite 4400
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Plaintiff Equinix, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EQUINIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NOVACLOUD LICENSING, LLC,<br><br>Defendant. | Case No. 3:26-cv-10585<br><br>**EQUINIX, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Equinix, Inc. ("Equinix"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, files this Complaint for Declaratory Judgment against Defendant NovaCloud Licensing, LLC ("NovaCloud") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement of United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

2. This action by Equinix seeks a determination that Equinix does not infringe any enforceable claim of U.S. Patent Nos. 8,401,028 (the "'028 Patent"); 8,606,738 (the "'738 Patent"); 7,869,447 (the "'447 Patent"); 8,407,348 (the "'348 Patent"); and 9,847,903 (the "'903 Patent") (collectively, the "Patents-in-Suit").

## THE PARTIES

3. Plaintiff Equinix, Inc. is a Delaware corporation with a principal place of business at One Lagoon Drive, Redwood City, California 94065.

4. On information and belief, Defendant NovaCloud Licensing, LLC is a Delaware limited liability company with its principal place of business at 530 Lytton Avenue, 2nd Floor, #2104, Palo Alto, CA 94301.

## JURISDICTION AND VENUE

5. This is a civil action for declaratory judgment of non-infringement with respect to the Patents-in-Suit under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

7. Pursuant to 28 U.S.C. § 2201, this Court can provide the declaratory relief sought

in Equinix's Complaint because an actual case or controversy exists between Equinix and NovaCloud. An actual case or controversy exists at least because Equinix does not infringe and has not infringed any claims of the Patents-in-Suit.

8. This Court has personal jurisdiction over NovaCloud because its principal place of business is in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391 because NovaCloud has a regular and established place of business in this District and is subject to personal jurisdiction here.

**FACTUAL BACKGROUND**

10. Equinix is a global digital infrastructure company. Equinix operates International Business Exchange ("IBX") data centers, providing colocation, interconnection, and managed infrastructure services to enterprises, cloud providers, network service providers, and other businesses worldwide. Equinix's platform connects businesses to their customers, employees, and partners through a global network of data centers spanning multiple continents.

11. NovaCloud is a non-practicing entity that acquired a portfolio of approximately 40 patent families and 152 worldwide patent assets from Telefonaktiebolaget LM Ericsson in 2024. Upon information and belief, NovaCloud does not make, use, sell, or offer for sale any products or services practicing the Patents-in-Suit. Upon information and belief, NovaCloud's sole business is monetizing patents through licensing efforts and if those fail enforcement of its patent assets through litigation.

12. Beginning in May 2025, NovaCloud launched a broad patent assertion campaign, filing infringement suits against at least eight operating companies including Meta, IBM, Amazon, Microsoft, Charter Communications, Google, Cox Communications, and Akamai asserting some of the same patents at issue here from the same patent portfolio. NovaCloud's campaign was well underway before they ever approached Equinix. Two other companies, SAP and Comcast, have

since filed preemptive declaratory judgment actions against NovaCloud. Beginning in March 2026, NovaCloud began targeting Equinix as an alleged infringer of certain of its patent assets and requesting that Equinix engage in negotiations about licensing NovaCloud patents.

13. On April 13, 2026, NovaCloud emailed Equinix's Chief Legal Officer (CLO) attaching a draft non-disclosure agreement ("NDA"). *See* Exhibit A (4/13/2026 email), and Exhibit B (draft NDA). The purported purpose of the NDA was to "include[] provisions to protect us both from the typical concerns parties have in engaging in meaningful business and technical discussions relating to patents like these—i.e., we will not use the discussions or any information exchanged to support any notice, willfulness, or indirect infringement/inducement claims or arguments against Equinix and Equinix will not use the discussions or any information exchange to support any declaratory judgment action or other claim/action against NovaCloud or the patents." *See* Exhibit A. Despite couching the licensing outreach in euphemistic terms like "good-faith licensing negotiations" and "amicable business resolution," the obvious implication was that failure by Equinix to engage in licensing negotiations or a business resolution would necessarily trigger patent infringement litigation by NovaCloud.

14. While NovaCloud's proposal is dressed in the language of ordinary commercial cooperation, the substance was dispute oriented. The parties are not simply discussing a business relationship; they're negotiating under the shadow of an asserted patent position, with NovaCloud asking Equinix to make reciprocal commitments about how information exchanged can and cannot be used in subsequent litigation. Calling negotiations "good-faith" and "amicable" does not make the underlying leverage disappear.

15. NovaCloud's proposed NDA was structured to create a "safe harbor" from declaratory judgment jurisdiction—allowing NovaCloud to assert its patent rights against Equinix while contractually prohibiting Equinix from seeking judicial resolution. The Federal Circuit has

expressly rejected such tactics, holding that "a patentee cannot . . . avoid the threat of a declaratory judgment action by entering into license negotiations with a potential infringer." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). As the *SanDisk* court explained, "[w]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise." *Id.*

16. Under the specter of litigation, Equinix engaged in good faith in these negotiations prompted by NovaCloud. On May 1, 2026, Equinix's Legal Manager of Innovation & Intellectual Property responded to NovaCloud with proposed edits to the NDA. These edits addressed "[s]cope/definition of Protected Information and practical handling expectations, including confirming that the existence of discussions can be shared with each party's board for internal coordination," "[p]ermitted disclosures so each party can involve necessary internal stakeholders and advisors (e.g., subsidiaries, employees, consultants/contractors, and legal counsel) who have a need to know and are bound by confidentiality obligations," "Rule 408 alignment, confirming the discussions/information are treated as settlement communications consistent with Rule 408 and its exceptions/limitations," and "[b]alanced "no liability / no use" protections around notice/willfulness and use of discussions/information in proceedings." Exhibit C.

17. However, NovaCloud's May 12, 2026 response to Equinix's edits to the NDA further revealed that NovaCloud is not interested in an "amicable business resolution" (Exhibit A) like it said, but rather in positioning itself for litigation should Equinix not agree to its demands. In response to Equinix's edits proposing that necessary stakeholders be permitted to review disclosed information under the NDA, NovaCloud stated that "providing information to any third party for the purpose of (or with the effect of) enabling challenges to the patents is antithetical to the 'mutual non-use' purposes of the NDA." Exhibit D. Further, NovaCloud stated that "the

identify [sic] of particular patents or subset of patents that NovaCloud identifies as being, in NovaCloud's view, potentially relevant to Equinix and/or that we may select for discussion and/or charting, is not public and should not be shared or used." *Id.* And perhaps most telling as to NovaCloud's motivations to try and block a declaratory judgment action, NovaCloud made clear that one of the purposes of the NDA was to prevent information being used to support a declaratory judgment action: "One of the purposes of the NDA is to exchange information/positions freely, without risk of the information being used to support any action relating to the patents (either by NovaCloud or by Equinix - e.g., a declaratory judgment action)." *Id.* NovaCloud's responses to Equinix's reasonable edits to the NDA make clear that NovaCloud was positioning itself for litigation, while simultaneously trying to "avoid the threat of a declaratory judgment action by entering into license negotiations with" Equinix. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). NovaCloud's attempt to extract licensing fees under the shadow of litigation while contractually foreclosing Equinix's ability to seek judicial resolution is precisely the conduct the Declaratory Judgment Act was designed to prevent.

18. Equinix's Legal Manager was on leave at the time of this response, and unsatisfied with a delay, NovaCloud then escalated its campaign and contacted Equinix's CEO. On July 17, 2026, NovaCloud sent a letter to Equinix's CEO asserting that five patents and specific claims from those patents are "relevant" to Equinix's products, specifically identifying: U.S. Patent Nos. 8,401,028 and 8,606,738 (claim 1) with respect to Equinix Network Edge; 7,869,447[1] (claim 1) with respect to Equinix Fabric, Fabric Router, and Fabric Cloud Router; 8,407,348 (claim 1) with respect to Equinix SmartView; and 9,847,903 (claim 1) with respect to Equinix Network Edge, Fabric, and Fabric Cloud Router. NovaCloud's identification of specific patents and claims as being

[1] The letter mistakenly identifies U.S. Patent No. 7,869,447 as U.S. Patent No. 7,469,447, a patent relating to a vehicle hinge.

"relevant to" specific Equinix products shows that NovaCloud has already performed an infringement analysis of the five identified patents and concluded that those patents were implicated and used by Equinix's products thus requiring a license. A true and correct copy of the July 17, 2026 letter is attached as Exhibit E.

19. NovaCloud's letter invited Equinix to "have its patent counsel examine these patents to determine whether a non-exclusive license under the patent is needed" and proposed a nondisclosure agreement with mutual non-use provisions. *Id.* NovaCloud's suggestion that Equinix should determine whether a license is "needed" constitutes an effective charge of infringement—there would be no need for a license if Equinix's products did not practice NovaCloud's patented technology. *See ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1091-92 (N.D. Cal. 2013) (finding an effective charge of infringement where patentee stated products "require a license" and explaining that "[c]learly there would be no need for a license if the [accused] products did not practice the patented technology"). NovaCloud's letter also referenced its licensing discussions with "around a dozen of Equinix's industry peers" and touted an executed license with Oracle. *Id.*

20. The parties continued negotiations regarding a potential NDA, wherein the ability for Equinix to share information with necessary stakeholders was a key point in negotiation. Equinix made clear that it "underst[oo]d the intent of the mutual non-use framework; however, Equinix's ability to consult with its ordinary-course advisors and partners, including those that assist with patent risk assessment and defense, is a fundamental requirement and not inconsistent with good-faith evaluation discussions. Limiting disclosure based on whether it could 'enable challenges' is overly broad and would, in practice, restrict standard internal and external evaluation workflows, including consultation with technical experts, advisors, and defensive partners operating under appropriate confidentiality obligations. Accordingly, any restriction in this area

should be narrowly tailored to prevent misuse of confidential information, rather than broadly constraining Equinix's ability to assess, resolve, and defend against potential patent assertions." Exhibit F.

21. While the parties continued negotiations on the NDA, representatives from each party held a videoconference on August 20, 2026 to continue discussions.

22. On August 25, 2026, NovaCloud sent further edits to the NDA back to Equinix. NovaCloud specifically added language to this draft of the NDA to preclude Equinix from filing a declaratory judgment action. *See* Exhibit G.

23. On September 14, 2026, NovaCloud sent further correspondence to Equinix following up on the revised NDA and noting that it "wanted to give you a quick update on the recent resolutions with a number of companies (which will end the vast majority of our pending litigation and also includes several other companies with who we were engaged in productive discussions ***and did not need to file litigation***. …We want to share detailed information with you so that you can assess the relevance of the portfolio, particularly in light of our recent resolutions—but we need to know ASAP that we [Equinix and NovaCloud] are heading toward finalizing the NDA and having that substantive discussion within the coming weeks." *See* Exhibit H (emphasis added). NovaCloud's communications convey that there are two options for the companies it targets: (1) "engage[ment] in productive discussions" where they "did not need to file litigation" or (2) litigation.

24. Equinix has not entered into an NDA with NovaCloud at this time.

25. Significantly, there is substantial overlap between the patents NovaCloud is asserting in its litigation campaign and the patents NovaCloud identified as "relevant to" Equinix. The '028 Patent, which NovaCloud identified as relevant to Equinix's Network Edge product, is being actively asserted against Meta, IBM, Amazon, Microsoft, Google, and Akamai. The '348

Patent, which NovaCloud identified as relevant to Equinix's SmartView product, is being asserted against IBM. The '903 Patent and the '738 Patent, which NovaCloud identified as relevant to Equinix's Network Edge, Fabric, and related products, are among the 21 patents that SAP has challenged in a preemptive declaratory judgment action, confirming that NovaCloud has identified these patents as relevant to yet another technology company's products. Thus, at least two of the five Patents-in-Suit are being actively enforced by NovaCloud through litigation (while the others were raised in a declaratory judgment action by another target), confirming that NovaCloud's communications to Equinix regarding these same patents were not mere licensing chatter but part of a coordinated enforcement campaign.

26. The Federal Circuit's decision in *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008), confirms that NovaCloud's enforcement pattern creates a justiciable case or controversy. In *Micron*, the patentee MOSAID owned several patents in the DRAM chip field and pursued a systematic licensing and litigation strategy against each of the four leading DRAM manufacturers. 518 F.3d at 899–900. After Micron received several threats and then "watched MOSAID sue each of the other leading DRAM manufacturers," the Federal Circuit held that the record supported "a real and substantial dispute between these parties" for declaratory judgment jurisdiction. *Id.* at 901. Here, like *Micron*, Equinix has watched NovaCloud systematically sue other companies in the industry (including Meta, IBM, Amazon, Microsoft, Google, Charter Communications, and Cox Communications) on patents that overlap with those NovaCloud identified as relevant to Equinix. NovaCloud's enforcement pattern, taken together with its targeted communications to Equinix identifying specific patents and claims as relevant to specific Equinix products, demonstrates a real and immediate controversy that satisfies the standard set forth in *Micron*.

27. The totality of NovaCloud's course of conduct creates a substantial and immediate

controversy between the parties regarding Equinix's right to make, use, sell, and offer for sale its products and services free from allegations of infringement of the Patents-in-Suit. Over the last six months, NovaCloud has continuously escalated conversations regarding its patents. While NovaCloud may have framed the initial discussions with Equinix's CLO as "amicable," NovaCloud quickly escalated by sharing an NDA expressly contemplating subsequent patent litigation in the absence of a license, sending a letter to Equinix's CEO identifying specific patents and claims that were "relevant to" Equinix's products and advising Equinix to consult with patent counsel to determine whether a license was "needed"—an effective charge that Equinix's products practice the patented technology. *See ActiveVideo*, 975 F. Supp. 2d at 1091-92. Together with NovaCloud's proposed NDA—including its resistance to Equinix sharing information with necessary stakeholders, and its unequal provisions blocking Equinix from filing a declaratory judgment action while simultaneously allowing itself to file infringement actions—makes clear that NovaCloud's true motivation is one of leverage and threat, not amicable business resolutions.

28. It is clear from NovaCloud's communications that Equinix currently has two options: agree to the NDA and take a license (like Oracle, allegedly) or get sued for patent infringement (like IBM, Amazon, Microsoft, Charter Communications, Google, Cox Communications, and Akamai, some of whom face infringement allegations as to the same patents identified as relevant to Equinix). The context is particularly significant here because the proposed NDA expressly contemplates subsequent patent litigation. Just because NovaCloud has avoided using "magic words" like infringement does not eliminate the litigation pressure inherent in the proposed arrangement, particularly where NovaCloud has clearly performed an infringement investigation and analysis of Equinix's products in view of at least five of its portfolio patents. Under the arrangement proposed by NovaCloud, the parties would be exchanging information concerning asserted patent rights while simultaneously agreeing to restrictions governing how that

information could be used in potential litigation if/when licensing negotiations fail.

29. NovaCloud's actions against Equinix confirm its intent is litigation when taken together with its litigation campaign against several of Equinix's peers. The Federal Circuit has recognized that such enforcement patterns are strong evidence of a real and immediate controversy. *See Micron*, 518 F.3d at 901. Here, NovaCloud's systematic suits against Equinix's peers, on patents overlapping those it identified as relevant to Equinix, provide the same kind of evidence.

The instant Complaint for Declaratory Judgment is also narrow in scope. It is directed to the specific patents that NovaCloud identified as being "relevant to" Equinix's products.

30. The products and services at issue in this action include Equinix Network Edge, Equinix Fabric, Fabric Router, Equinix Fabric Cloud Router, and Equinix SmartView (collectively, the "Accused Products and Services"). These are general-purpose data center, networking, interconnection, and infrastructure monitoring offerings that serve a wide variety of enterprise customers across numerous industries.

31. On information and belief, NovaCloud purports to be the owner, by assignment from Ericsson, of all right, title, and interest in the '028 Patent (entitled "Selection of an Edge Node in a Fixed Access Communication Network"). A true and correct copy of the '028 Patent is attached as Exhibit I.

32. On information and belief, NovaCloud purports to be the owner, by assignment from Ericsson, of all right, title, and interest in the '738 Patent (entitled "Policy-Based Management in Communication Network"). A true and correct copy of the '738 Patent is attached as Exhibit J.

33. On information and belief, NovaCloud purports to be the owner, by assignment from Ericsson, of all right, title, and interest in the '447 Patent (entitled "Method and System for Multi-Domain Virtual Private Network Configuration"). A true and correct copy of the '447 Patent

is attached as Exhibit K.

34. On information and belief, NovaCloud purports to be the owner, by assignment from Ericsson, of all right, title, and interest in the ’348 Patent (entitled “Monitoring Network Usage”). A true and correct copy of the ’348 Patent is attached as Exhibit L.

35. On information and belief, NovaCloud purports to be the owner, by assignment from Ericsson, of all right, title, and interest in the ’903 Patent (entitled “Method and Apparatus for Configuring a Communication System”). A true and correct copy of the ’903 Patent is attached as Exhibit M.

**COUNT I**

**DECLARATION REGARDING NON-INFRINGEMENT OF THE ’028 PATENT**

36. Equinix incorporates and realleges the foregoing paragraphs.

37. Based on NovaCloud’s assertions that Equinix infringes the ’028 Patent, an actual controversy has arisen and now exists between the parties as to whether Equinix infringes any claim of the ’028 Patent.

38. Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the ’028 Patent, at least because Equinix’s Network Edge offering does not employ, incorporate, or otherwise make use of all the limitations of the ’028 Patent’s claims.

39. For example, claim 1 of the ’028 Patent requires, among other things, “at a selection node, receiving from a host entity a request for a network service” and “sending a response to the host entity, the response including information identifying the selected edge node.” Equinix’s Network Edge is a one-time provisioning platform for virtual network devices triggered by customer orders through a portal or API, not a runtime service that selects an edge node in response

to a host entity's request for a network service. No identity of a selected physical server is returned to a requesting host.

40. For at least these reasons, Equinix's Network Edge offering does not infringe the '028 Patent.

41. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Equinix requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '028 Patent.

**COUNT II**

**DECLARATION REGARDING NON-INFRINGEMENT OF THE '738 PATENT**

42. Equinix incorporates and realleges the foregoing paragraphs.

43. Based on NovaCloud's assertions that Equinix infringes the '738 Patent, an actual controversy has arisen and now exists between the parties as to whether Equinix infringes any claim of the '738 Patent.

44. Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '738 Patent, at least because Equinix's Network Edge offering does not employ, incorporate, or otherwise make use of all the limitations of the '738 Patent's claims.

45. For example, claim 1 of the '738 Patent requires, among other things, "a policy enforcement point associated with a plurality of policy decision points" and "a policy strategy point" that reconciles decisions from the plurality of policy decision points using "a decision strategy that comprises an algorithm." Equinix's Network Edge implements ordinary access control lists (ACLs) applied in a traditional manner at a single gateway, alongside role-based

access controls. Network Edge does not include a policy enforcement point associated with multiple policy decision points, nor does it include a policy strategy point that reconciles conflicting decisions using a configurable algorithm.

46. For at least these reasons, Equinix's Network Edge offering does not infringe the '738 Patent.

47. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Equinix requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '738 Patent.

**COUNT III**

**<u>DECLARATION REGARDING NON-INFRINGEMENT OF THE '447 PATENT</u>**

48. Equinix incorporates and realleges the foregoing paragraphs.

49. Based on NovaCloud's assertions that Equinix infringes the '447 Patent, an actual controversy has arisen and now exists between the parties as to whether Equinix infringes any claim of the '447 Patent.

50. Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '447 Patent, at least because Equinix's Fabric, Fabric Router, Fabric Cloud Router, and related interconnection offerings do not employ, incorporate, or otherwise make use of all the limitations of the '447 Patent's claims.

51. For example, claim 1 of the '447 Patent requires, among other things, "configuration of a multi-domain virtual private network (VPN) within a communications network" involving "at least two VPN provider domains" and "matching an identity of the first VPN with VPN identities

of a second VPN provider domain." Equinix operates Fabric and Fabric Cloud Router as a single-provider network, centrally orchestrated end to end by Equinix. There are not two independent, interconnected VPN provider domains, and no cross-domain VPN identity discovery or matching occurs.

52. For at least these reasons, Equinix's Fabric, Fabric Router, Fabric Cloud Router, and related interconnection offerings do not infringe the '447 Patent.

53. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Equinix requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '447 Patent.

**COUNT IV**

**DECLARATION REGARDING NON-INFRINGEMENT OF THE '348 PATENT**

54. Equinix incorporates and realleges the foregoing paragraphs.

55. Based on NovaCloud's assertions that Equinix infringes the '348 Patent, an actual controversy has arisen and now exists between the parties as to whether Equinix infringes any claim of the '348 Patent.

56. Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '348 Patent, at least because Equinix's SmartView offering does not employ, incorporate, or otherwise make use of all the limitations of the '348 Patent's claims.

57. For example, claim 1 of the '348 Patent requires "monitoring a user's usage of a network service," including "recording a length of time that a service in the network was considered active relative to a predefined activity threshold value," "recording an average loading

of the network service," and "recording a length of time in which the network service was considered saturated relative to a predefined saturation threshold value." SmartView is a data center infrastructure monitoring (DCIM) portal that monitors the physical data center environment like power draw, temperature and humidity, and the operating status of mechanical and electrical assets. SmartView does not monitor any network service, does not record the activity, average loading, or saturation of a network service, and does not apply activity or saturation thresholds to any network service.

58. For at least these reasons, Equinix's SmartView offering does not infringe the '348 Patent.

59. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Equinix requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '348 Patent.

**COUNT V**

**DECLARATION REGARDING NON-INFRINGEMENT OF THE '903 PATENT**

60. Equinix incorporates and realleges the foregoing paragraphs.

61. Based on NovaCloud's assertions that Equinix infringes the '903 Patent, an actual controversy has arisen and now exists between the parties as to whether Equinix infringes any claim of the '903 Patent.

62. Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '903 Patent, at least because Equinix's Network Edge, Fabric, and Fabric Cloud Router offerings do not employ, incorporate, or otherwise make use of all the limitations of the '903 Patent's claims.

63. For example, claim 1 of the '903 Patent requires "a method in a configuration server for configuring a communication system," including "configuring a first plurality of nodes in a first cluster, each of the first plurality of nodes storing a configuration service address relating to the configuration server" and "configuring a second plurality of nodes in a second cluster" such that the configuration server "acts as a common configuration server for at least the first and second clusters." To the extent SD-WAN devices on Network Edge pull their configuration from a controller, that controller is the customer's or vendor's third-party orchestrator (e.g., Versa Director, Palo Alto Panorama, Cisco vManage), not Equinix. Equinix does not operate the configuration server and does not perform the claimed configuration method. For standalone devices, Equinix loads configuration via a push model, which is the opposite of the claimed pull model.

64. For at least these reasons, Equinix's Network Edge, Fabric, and Fabric Cloud Router offerings do not infringe the '903 Patent.

65. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Equinix requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '903 Patent.

## RESERVATION OF RIGHTS

66. Equinix hereby reserves its rights to supplement with additional claims or defenses as discovery proceeds in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Equinix respectfully requests this Court to enter judgment in Equinix's favor and against NovaCloud by granting the following relief:

a) a declaration that Equinix does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any enforceable claim of the Patents-in-Suit;

b) a permanent injunction restraining NovaCloud, and its respective officers, agents, servants, employees, attorneys, and any other persons acting on its behalf or in concert with it, from charging or threatening, orally or in writing, that the Patents-in-Suit have been infringed by Equinix under any subsection of 35 U.S.C. § 271;

c) a finding based upon 35 U.S.C. § 285 that this case is exceptional;

d) an award to Equinix of its reasonable attorneys' fees, costs, and all interest; and

e) such other and further relief as the Court finds just and proper.

**JURY DEMAND**

Plaintiff Equinix, Inc., hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 16, 2026

**WINSTON TAYLOR LLP**

By */s/Eimeric Reig-Plessis*

Eimeric Reig-Plessis (SBN: 321273)
eimeric.reig@winstontaylor.com
101 California Street
San Francisco, CA 94111-5891
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Samantha Lerner (*pro hac vice forthcoming*)
IL Bar No. 6293319
samantha.lerner@winstontaylor.com
300 N. LaSalle Drive Chicago, Suite 4400
IL 60654-3406
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

William M. Logan (*pro hac vice forthcoming*)
TX Bar No. 24106214
william.logan@winstontaylor.com
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Brian L. O'Gara (*pro hac vice forthcoming*)
IL Bar No. 6342669
brian.ogara@winstontaylor.com
300 N. LaSalle Drive, Suite 4400
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Plaintiff Equinix, Inc.*